IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| JAMES E. STRONG, § | |
| § | |
| Plaintiff, § | |
| § | |
| v. § | Civil Action No. 4:22-cv-00136-O-BP |
| § | |
| UNITED PETROLEUM § | |
| TRANSPORTS, INC., § | |
| § | |
| Defendant. § | |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE**

Before the Court are the Motion to Dismiss Plaintiff's Third Complaint, Appendix in Support, and Reply filed by Defendant United Petroleum Transports, Inc. ("UPT") (ECF Nos. 33, 34, 42) and the Response of Plaintiff James E. Strong ("Strong"). ECF No. 38. After considering the pleadings and applicable legal authorities, the undersigned **RECOMMENDS** that United States District Judge Reed O'Connor **GRANT IN PART** and **DENY IN PART** the Motion to Dismiss. Judge O'Connor should **DISMISS WITHOUT PREJUDICE** Plaintiff's claims under Title VII of the Civil Rights Act of 1964, Chapter 21 of the Texas Labor Code, and the Private Sector Whistleblower Protection Streamlining Act claim. Judge O'Connor should **DENY IN PART** the Motion as to Strong's § 1981 discrimination and retaliation claims.

I.  **BACKGROUND**

Unless noted otherwise, the following facts are taken from Strong's original and three amended complaints, which the Court has liberally construed. Strong is a truck driver who has worked for UPT in Euless, Texas since September 2013. ECF No. 30 at 3. He accomplished a high level of achievement in his first few years and became one of UPT's leading drivers, in terms of loads hauled per day and money earned by the load. *Id.* At some time in 2017, Strong began

noticing significant safety issues with the trucks. *Id.* He saw fuel leaks from a gasket on the side of the fuel trailer, worn out tires, improperly aligned wheels, broken kingpins, and leaking air conditioning units. *Id.* He brought these defects to his supervisor's attention upon discovery, but UPT took no remedial action to fix the trucks. *Id.* at 4. Strong believes that the defective trucks were made available "especially to Black, African American drivers." *Id.* Strong reported these safety issues to the United States Department of Transportation ("DOT") in 2018. *Id.*

Around the same time Strong started reporting these issues, but apparently unrelated, he was assigned to a new supervisor. *Id.* Strong alleges this new supervisor was rude to him and another black employee. *Id.* UPT's management also began retaliating against Strong. Managers demanded his truck get inspected every day, prevented him from working in a timely manner, and assigned him trucks that were "out of service and not road ready, causing him to lose loads and pay." *Id.* The "situation" got worse still after he complained about his new supervisor's "discrimination, racism, humiliation, and retaliation" *Id.* His supervisor targeted him for suspension with no warning for reasons that violated UPT's policies. *Id.* at 5. Strong also claims that other white drivers with no experience were promoted over him and other black drivers/dispatchers. *Id.*

In December 2017, Strong made two "minor" mistakes, delivering fuel late and accidently overfilling past the ninety percent clerical threshold. *Id.* at 5. Because of these mistakes, Strong was suspended without pay for three days. *Id.* These actions contradicted UPT's disciplinary policies. ECF No. 18 at 3. Strong alleges that discrepancies in UPT's policies are based on race. ECF No. 30 at 6-9. During this same time period, other employees told him that some UPT mechanics and shop managers engaged in disparaging and discriminatory remarks in the workplace. *Id.*

Strong believes that black and white employees were routinely disciplined disproportionately, and he considers these actions to be racially motivated. *Id.* On February 7, 2018, Strong filed a complaint with the Equal Employment Opportunity Commission ("EEOC") alleging racial discrimination and retaliation. *Id.* at 3-4. Strong was fired on August 2, 2018, six months after filing his EEOC complaint. *Id.* at 6; ECF No. 46. He believes that his firing was due in part to his filing of his EEOC complaint. ECF No. 30 at 6, 10. On January 25, 2021, the EEOC sent a Right-to-Sue letter to Strong's home address and to his attorney. *Id.* at 16. Strong did not notify the EEOC of any change of address, but he states that he had not been living at his home address for over a year because he and his wife had divorced. ECF No. 30 at 20. Strong, working with his second attorney, contends that his original attorney received the EEOC's letter but failed to notify him of it, even after repeated attempts to reach the attorney. *Id.* Strong received the letter from his attorney on or around December 1, 2021, almost a year after the EEOC sent the letter to his home address and the original lawyer's address. *Id.*

Strong initiated this *pro se* proceeding against UPT on February 22, 2022. ECF No. 1. He then filed an amended complaint (ECF No. 9), a second amended complaint (ECF No. 15), and a third complaint. (ECF No. 30). Liberally construed, the third complaint (ECF No. 30) alleges racial discrimination and retaliation under Title VII of the Civil Rights Act of 1964 ("Title VII") and Chapter 21 of the Texas Labor Code ("Chapter 21"); racial discrimination and retaliation under 42 U.S.C. § 1981; and retaliation under the Private Sector Whistleblower Protection Streamlining Act Whistleblower Act. ("Whistleblower Act"). *Id.* at 9-13.

UPT moved to dismiss the case after each complaint, most recently in its Motion to Dismiss Plaintiff's Third Complaint. (ECF No. 33-34). UPT argues under Federal Rule of Civil Procedure 12(b)(6) that Strong (1) untimely exhausted his administrative remedies prior to commencing his Title VII and Chapter 21 discrimination and retaliation claims; (2) brought his § 1981 claims after

3

the statute of limitations had run and failed to allege a proper § 1981 claim; and (3) cannot recover under the Whistleblower Act because it was never enacted and became law. ECF No. 33 at 10-26.

## II.     LEGAL STANDARDS

### A.     Rule 12(b)(6) Standard

Federal Rule of Civil Procedure 12(b)(6) permits dismissal of a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To state a claim for relief, Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(1). While a complaint does not need detailed factual allegations to survive a Rule 12(b)(6) motion to dismiss, "a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Rather, the complaint must include enough facts "to raise a right to relief above the speculative level" with the court operating "on the assumption that all the complaint's allegations are true." *Id.*

District courts "can grant a motion to dismiss only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan v. Tex. A&M Univ.*, 343 F.3d 533, 536 (5th Cir. 2003) (citing *Leffall v. Dall. Indep. Sch. Dist.*, 28 F.3d 521, 524 (5th Cir. 1994)). Thus, "[a] complaint is subject to dismissal for failure to state a claim if the allegations, taken as true, show the plaintiff is not entitled to relief." *Jones v. Bock*, 549 U.S. 199, 215 (2007). When considering a Rule 12(b)(6) motion, courts must "take all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff . . . and ask whether the pleadings contain 'enough facts to state a claim to relief that is plausible on its face.'" *Yumilicious Franchise, LLC v. Barrie*, 819 F.3d 170, 174 (5th Cir. 2016) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

In ruling on a motion to dismiss, courts may consider documents outside the complaint that are: (1) attached to the motion; (2) referenced in the complaint; and (3) central to the plaintiff's claims. *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007). Additionally, courts may take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *See Randall D. Wolcott, M.D., P.A. v. Sebelius*, 635 F.3d 757, 763 (5th Cir. 2011) ("Generally, a court ruling on a 12(b)(6) motion may rely on the complaint, its proper attachments, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice.") (citation and quotation marks omitted).

There is a "well-established policy that the plaintiff be given every opportunity to state a claim." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citing *Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)). It is federal policy to decide cases on the merits rather than technicalities, and thus when possible the Fifth Circuit recommends suits be dismissed without prejudice on Rule 12 motions. *Great Plains Tr. Co. v. Morgan Stanley Dean Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002). As a result, courts generally allow plaintiffs at least one opportunity to amend following a Rule 12 dismissal on the pleadings, "unless it is clear that the defects are incurable." *Great Plains Tr. Co.*, 313 F.3d at 329. An incurable defect may arise when a complaint's facts are "not actionable as a matter of law." *Id.* In such situations, amendment would be futile, and dismissal with prejudice is appropriate. *Schiller v. Physicians Res. Grp., Inc.*, 342 F.3d 563, 566 (5th Cir. 2003).

### B.   Title VII and Chapter 21 Standard

Title VII makes it illegal for employers to "discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin." 42 U.S.C. § 2000(e); *see Harvey v. Blake*, 913 F.2d 226, 227-28 (5th Cir. 1990). Chapter 21 exists to "provide for the execution of the policies of Title

VII." Tex. Lab. Code Ann. § 21.001(1). The operative legal standards are identical for violations of Title VII and Chapter 21. *See Bartosh v. Sam Houston State Univ.*, 259 S.W. 3d 317, 321-22 & n.7 (Tex. App.—Texarkana 2008, pet. denied) ("The Texas Labor Code discrimination provisions are modeled on Title VII . . . and Texas courts follow the federal statutes and cases in applying the Texas statute."). As discussed below, any references to Strong's Title VII claim would be identical to a Chapter 21 claim.

To show Title VII racial discrimination, the plaintiff must establish he: "(1) is a member of a protected group; (2) was qualified for the position at issue; (3) was discharged or suffered some adverse employment action by the employer; and (4) was replaced by someone outside his protected group or was treated less favorably than other similarly situated employees outside the protected group." *McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007). The plaintiff bears the initial burden of establishing each element in his pleadings. *McDonnell Douglass Corp. v. Green*, 411 U.S. 792, 802 (1973). Only after the plaintiff has demonstrated each element in his pleadings does the burden shift to the defense. *Id.*

"[A]lthough plaintiffs do not 'have to submit evidence to establish a prima facie case . . . at [the dismissal] stage, [they must] plead sufficient facts on all of the *ultimate elements* . . . to make [their] case plausible.'" *Cicalese v. Univ. of Tex. Med. Branch*, 924 F.3d 762, 765 (5th Cir. 2019) (quoting *Chhim v. Univ. of Tex. at Austin*, 836 F.3d 467, 470 (5th Cir. 2016)) (emphasis and alterations in original). "Specifically, a plaintiff must allege specific facts sufficient to support a finding that he was treated less favorably than others outside of his protected class." *Olivarez v. T-Mobile USA, Inc.*, 997 F.3d 595, 600 (5th Cir. 2021). Similarly, to assert a Title VII retaliation claim, "a plaintiff bears the initial burden to show: '(1) that he engaged in activity protected by Title VII, (2) that an adverse employment action occurred, and (3) that a causal link existed between the protected activity and the adverse action.'" *Badgerow v. REJ Props., Inc.*, 974 F.3d

6

610, 618-19 (5th Cir. 2020) (quoting *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).

      **C.**      **Administrative Exhaustion Standard**

The EEOC enforces employment discrimination claims brought under Title VII. *See* 42 U.S.C. § 12117(a). Before a plaintiff can sue in federal court for violations of Title VII, "he must first file a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Dao v. Auchan Hypermarket*, 96 F.3d 787, 788 (5th Cir. 1996); *See also McClain v. Lufkin Indus., Inc.*, 519 F.3d 264, 273 (5th Cir. 2008) (applying the requirement to Title VII claims).

Plaintiffs satisfy the exhaustion requirement by filing a charge and receiving a "right-to-sue" letter from the EEOC or relevant state or local agency. *Dao*, 96 F.3d at 789 (discussing *Nilsen v. City of Moss Point, Miss.*, 621 F.2d 117, 120 (5th Cir. 1980)). Any resulting lawsuit must be limited to the scope of the EEOC's investigation, reasonably expected to flow from the charge, and filed within a statutory timeframe. *Id.*; *Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465-66 (5th Cir. 1970). Although the resulting suit can involve any kind of discrimination related to the charge's allegations, the charge must be sufficient to put the employer on notice of the plaintiff's allegations. *See Pacheco v. Mineta*, 448 F.3d 783, 789 (5th Cir. 2006).

Plaintiffs fail to exhaust their administrative remedies by either foregoing the above process or asserting claims beyond the scope of the charge and right-to-sue letter. *Dao*, 96 F.3d at 789. The requirement to file the lawsuit within the ninety-day limitation period is strictly construed. *Espinoza v. Missouri Pacific R.R. Co.,* 754 F.2d 1247, 1249 (5th Cir.1985). Courts within this circuit have repeatedly dismissed cases in which the plaintiff did not file a complaint until after the ninety-day limitation period had expired. *See e.g., Butler v. Orleans Parish School Board,* No. Civ. A. 00–0845, 2001 WL 1135616 (E.D. La. Sept.25, 2001). While not jurisdictional,

this requirement "is a precondition to filing suit in district court." *Cruce v. Brazosport Indep. Sch. Dist.*, 703 F.2d 862, 863-64 (5th Cir. 1983). Thus, complaints asserting unexhausted claims should be dismissed for failure to state a claim under Rule 12(b)(6). *Id.*; *Dao*, 96 F.3d at 788.

    **D.**    **42 U.S.C § 1981 Standard**

Section 1981 provides that "[a]ll persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts." 42 U.S.C. § 1981(a). The statute defines "[m]ake and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b); *Arguello v. Conoco, Inc.*, 330 F.3d 355, 358 (5th Cir. 2003). To bring a § 1981 claim for contractual discrimination, a plaintiff "must allege that (1) [he is a member] of a racial minority; (2) [the] [d]efendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." *Body by Cook, Inc. v. State Farm Mut. Auto. Ins.*, 869 F.3d 381, 386 (5th Cir. 2017) (citing *Bellows v. Amoco Oil Co.*, 118 F.3d 268, 274 (5th Cir. 1997).

Courts consider "retaliation claims based on Title VII and 42 U.S.C. **§** 1981 under the same rubric of analysis" described above. *Johnson v. PRIDE Indus., Inc.*, 7 F.4th 392, 399 (5th Cir. 2021) (internal quotation omitted). A prima facie retaliation claim "under either Title VII or § 1981 requires that a plaintiff show that: (1) he engaged in an activity protected by Title VII; (2) he was subjected to an adverse employment action; and (3) a causal link exists between the protected activity and the adverse employment action." *Id.* at 407–08 (internal quotation omitted).

"The plaintiff may establish a *prima facie* case by direct evidence or, more commonly, by circumstantial evidence of discriminatory motive." *Bellows.* 118 F.3d at 274 (the plaintiff must make his prima facie case by a preponderance of the evidence). Plaintiffs have the burden of initially pleading facts, that taken as true, permit the court to plausibly infer that "but for race,

8

[they] would not have suffered the loss of a legally protected right." *Hoyt v. Am. Nat'l Ins. Co.*, No. 3-20-cv-545-L; 2021 WL 2823449 at *5 (N.D. Tex. Jul. 6, 2021) (citing *Comcast Corp. v. Nat'l Ass'n of Afr. Am. Owned Media,* 140 S. Ct. 1009, 1019 (2020)).

### E. *Pro se* Pleading Standard

A *pro se* plaintiff's pleadings are liberally construed and courts have wide interpretive latitude. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A "*pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Id.* But "even a liberally-construed *pro se* ... complaint must set forth facts giving rise to a claim on which relief may be granted." *Levitt v. Univ. of Texas at El Paso*, 847 F.2d 221, 224 (5th Cir. 1988). Thus, a court inquires "whether within the universe of theoretically provable facts there exists a set which can support a cause of action under [the] complaint, indulgently read." *Covington v. Cole*, 528 F.2d 1365, 1370 (5th Cir. 1976).

## III. ANALYSIS

### A. Strong did not exhaust his administrative remedies on his Title VII and Chapter 21 discrimination or retaliation claims.

"Administrative exhaustion for Title VII claims is mandatory (but not jurisdictional), and courts will dismiss claims not properly exhausted." *Dao,* 96 F.3d at 789. A plaintiff exhausts those remedies by filing "a timely charge with the EEOC, or with a state or local agency with authority to grant or seek relief from the alleged unlawful employment practice." *Id.* (citing 42 U.S.C. § 2000e-5(e)(1) "Exhaustion occurs when [a] plaintiff files a timely charge with the EEOC and receives a statutory notice of right to sue." *Taylor v. Books A Million, Inc.*, 296 F.3d 376, 378-79 (5th Cir. 2002).

Once a claimant receives the notice, he has ninety days to file a civil action. *Id.* at 379. The ninety-day limitations period is strictly construed against all litigants, and *pro se* litigants are not excused from abiding by the limitations period. *Id*. This requirement essentially operates as

a statute of limitations. *Id; Espinoza v. Mo. Pac. R.R. Co.*, 754 F.2d 1247, 1249 n.1 (5th Cir. 1985). "When the date on which a right-to-sue letter was actually received is… disputed, courts have presumed various receipt dates ranging from three to seven days after the letter was mailed." *Taylor*, 296 F.3d at 379 (collecting cases). However, this presumption does not apply where a plaintiff demonstrates that he failed to receive the letters through no fault of his own or presents some other equitable reason for tolling the statute. *See Morgan v. Potter,* 489 F.3d 195, 197 (5th Cir. 2007). The plaintiff bears the burden of establishing a factual basis justifying tolling of the limitations period. *Hood v. Sears Roebuck & Co.,* 168 F.3d 231 (5th Cir. 1999).

The EEOC mailed Strong's Right-To-Sue Letter to the home address that Strong noted on his EEOC charge and to his attorney's office. ECF No. 30 at 20. Strong does not argue whether the Right-To-Sue letter was received at either address. *Id.* Strong acknowledges that he has not lived at the home address to which the letter was mailed for over a year because of divorce from his wife. *Id.* He did not provide the EEOC with a change of address as required by the Commission. 29 C.F.R. § 1601.7(b); ECF No. 18 at 4. As to delivery to his attorney's address, Strong contends in his affidavit what the Court construes as a claim that his lawyer was negligent and that his negligence resulted in a one-year delay in Strong receiving the letter. ECF No. 30 at 19-20. Strong alleges that he regularly checked in with his lawyer, but repeatedly got no response. *Id.* Strong did not reach out to EEOC or take any other action. *Id.* Strong suggests that this delay qualifies as an extenuating circumstance that tolls the ninety-day statute of limitation. *Id*.

Equitable tolling is not automatic. *See St. Louis v. Texas Worker's Compensation Comm'n,* 65 F.3d 43, 47 (5th Cir. 1995). Courts apply equitable tolling only in "rare and exceptional circumstances." *Teemac v. Henderson,* 298 F.3d 452, 457 (5th Cir. 2002). The negligent acts or omissions of a claimant's lawyer normally do not provide a basis for tolling. *See Harris v. Boyd Tunica, Inc.,* 628 F.3d 237, 239 (5th Cir. 2010) (district court rejected argument

10

for equitable tolling because it "does not normally apply to situations of attorney inadvertence or the inadvertence of the attorney's staff because a party is deemed bound by the acts of [his] lawyer or agent."). A party is bound by the acts of his lawyer. *Irwin v. Department of Veterans Affairs,* 498 U.S. 89, 96 (1990) (principles of equitable tolling do not extend to at best a garden variety claim of excusable neglect).

Strong neglected to notify the EEOC of his address change, and because his attorney's neglect does not rise to the level of "exceptional circumstances," Strong has not alleged a justifiable reason entitling him to equitable tolling. Therefore, Strong did not properly exhaust his administrative remedies by not filing suit under Title VII for almost a year after the EEOC mailed the Right-to-Sue letter. For the same reasons, Strong did not properly exhaust his administrative remedies under Chapter 21 of the Texas Labor Code. *Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 169–70 (5th Cir. 2014). Dismissals for lack of exhaustion are ordinarily without prejudice so plaintiffs may sue again if no resolution is reached after exhaustion. *See Taylor v. U.S. Treasury Dep't*, 127 F.3d 470, 478 (5th Cir. 1997). Therefore, Judge O'Connor should dismiss Strong's Title VII and Chapter 21 discrimination and retaliation claims without prejudice.

> **B.** **The statute of limitations does not bar Strong's § 1981 discrimination and retaliation claims.**

Strong's claims for discrimination and retaliation claims under § 1981 are not time-barred. Section 1981 lacks an express statute of limitations, so courts have adopted the most similar state-law limitations period. *See Jones v. R.R. Donnelley & Sons Co.,* 541 U.S. 369, 382 (2004). If the 1991 revisions to the statute supply the basis of plaintiff's claim against the defendant, then a four-year statute of limitations applies. *Id.* "The 1991 revisions allow a plaintiff to sue for conduct, such as harassment or termination, that occurs after contract formation." *Johnson v. Crown Enters., Inc.*, 398 F.3d 339, 341 (5th Cir. 2005). Therefore, where a plaintiff claims "hostile work environment,

11

wrongful termination, and failure to transfer," those claims arise under the 1991 amendment, and the four-year statute of limitations under 28 U.S.C. § 1658 applies. *Jones*, 541 U.S. at 382-83.

"Claims brought under § 1658 may not be commenced later than 4 years after the cause of action accrues." 28 U.S.C. § 1658(a). "The limitations period for [§] 1981 ... employment discrimination cases commences when the plaintiff knows or reasonably should know that the [challenged] discriminatory act has occurred." *Jones v. Alcoa, Inc.*, 339 F.3d 359, 364 (5th Cir. 2003). Strong alleges instances of discriminatory conduct against employees that occurred throughout his employment, including his suspension without pay, and he claims discrimination and retaliation ultimately due to his termination. ECF No. 30 at 4; ECF No. 46. His § 1981 claim, therefore, accrued when he was terminated on August 2, 2018, and he had until August 2, 2022, to file suit. Strong filed his lawsuit on February 22, 2022. ECF No. 1. Accordingly, Strong's § 1981 discrimination and retaliation claims are not time-barred.

### C. Strong alleges enough facts to survive a Rule 12(b)(6) dismissal of his § 1981 claims.

While detailed factual allegations are not necessary to survive Rule 12(b)(6) dismissal, a complaint must offer more than "conclusory statements" and "threadbare recitals of the elements of a cause of action." *Twombly*, 550 U.S. at 555. The Court can liberally construe two viable claims against UPT from the facts Strong third alleges in this third count.

#### 1. Racial Discrimination

UPT argues that dismissal is proper because Strong has not properly pleaded discriminatory intent or but-for causation. ECF No. 33 at 18-19. "'[N]aked allegations of discriminatory intent are too conclusory to survive a motion to dismiss," *C & K Trucking LLC v. Ardent Mills LLC*, No. 3:20-CV-1104-K, 2021 WL 211547, at *3 (N.D. Tex. Jan. 20, 2021). And while discriminatory intent can be shown by circumstantial evidence, a plaintiff must allege facts "sufficient to support an inference of discriminatory intent." *Body by Cook*, 869 F.3d at 387 n.1.

12

"An allegation that similarly situated non-minorities received better treatment could create the necessary inference and set the predicate for establishing the § 1981 claim." *Id.* at 386. Further, a plaintiff need not establish "but for" causation at the prima facie stage of a discrimination case. *Garcia v. Prof'l Contract Servs.*, 938 F.3d 236, 243 (5th Cir. 2019) ("the but-for causation requirement applies only in the third step (the pretext stage) of the *McDonnell Douglas* framework.").

In support of his racial discrimination claim, Strong alleges that he is African American, and as such, was intentionally "deprived of the same rights as enjoyed by white citizens to the creation, performance, enjoyment, and all benefits and privileges of [his] employment" with UPT. ECF No. 30 at 11. The Court liberally construes the Complaint to assert that only Strong and other black drivers were "given truck assignments that were out of service and not road ready" and that UPT gave Strong "a suspension with no warning" that violated "company policy" for mistakes. *Id.* The Complaint also states that "white employees were either not disciplined or were disciplined in compliance with the company policy." *Id.* at 3-6. Strong alleges the discrimination escalated from there, and he was ultimately fired for those pretextual reasons. *See Id.* at 4,7. Strong pleads his white supervisor "went out of his way to take away work from he and Ms. Reese [another black driver] and subsequently reduce their pay." *Id.* at 8.

Strong alleges that after he was fired, "white drivers made the same mistakes but were allowed to keep their jobs and not be disciplined or suspended for any violations of policy." *Id.* Finally, Strong pleads that a recruiter for UPT, another black woman at the company "who had knowledge of the terminations," stated to Strong's black co-worker that "she thought it was unfair and explained that the termination of Black, African American employees [were] often handled on days she was off from work." *Id.* Viewing these facts in the light most favorable to Strong, he has

pleaded enough facts on the ultimate elements to state a claim for racial discrimination under 42 U.S.C. § 1981. Therefore, Judge O'Connor should deny UPT Motion on this issue.

### 2. Retaliation

As noted above, to state a retaliation claim under § 1981, Strong must plead that (1) he engaged in activities that § 1981 protects, (2) an adverse employment action followed, and (3) a causal connection exists between the protected activities and the adverse action. *White Glove Staffing, Inc. v. Methodist Hosps. of Dall.*, 947 F.3d 301, 308 (5th Cir. 2020). Strong can satisfy the causal connection element by "showing close timing between an employee's protected activity and an adverse action against him." *Fiest v. Louisiana*, 730 F.3d 450, 454 (5th Cir. 2013). "Such temporal proximity must generally be 'very close.'" *Id.* (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273–74 (2001)). As with the discrimination claim, UPT argues that Strong's retaliation claims fails because if not time barred, he has not properly pleaded discriminatory intent or but-for causation. ECF No. 33 at 18-19.

To meet his burden, Strong must allege facts that support a reasonable belief that UPT engaged in an unlawful practice. *Scott v. U.S. Bank Nat'l Ass'n,* 16 F.4th 1204, 1213 (5th Cir. 2021). Here, Strong pleads that UPT suspended him without pay and ultimately fired him in retaliation for reporting safety issues to the DOT and for filing discrimination charges with the EEOC. ECF No. 30 at 4, 6. Race simply needs to be a factor, not necessarily the only factor, in the adverse employment action. *Scott,* 16 F.4th at 1212. It does not matter, as UPT contends it does, that Strong alleges initial retaliation because he reported safety issues to the DOT. ECF No. 33 at 22.

As to timing and causation, the Fifth Circuit has found that a gap of eleven months is too great to establish a causal connection. *Alkhawaldeh v. Dow Chem. Co.*, 851 F.3d 422, 428 n.23 (5th Cir. 2017) (noting an eleven-month interval between protected activity and termination raised

14

"serious temporal-proximity concerns"). UPT fired Strong on August 2, 2018, only six months after filing his EEOC claim, and he contends the discrimination continued throughout that time. ECF Nos. 30 at 6; 47. Taking all the well-pleaded facts as true and viewing them in the light most favorable to Strong as it must in considering a Rule 12(b)(6) motion, *see Yumilicious,* 819 F.3d at 174, the Court concludes that it does not appear beyond doubt that Strong "can prove no set of facts in support of his claim that would entitle him to relief." *Scanlan*, 343 F.3d at 536 (citing *Leffall*, 28 F.3d at 524). Moreover, if Strong's allegations are true, his entitlement to relief seems plausible. Thus, Judge O'Connor should not dismiss his **§** 1981 discrimination and retaliation claims.

### D. Strong's Whistleblower Act claim fails as a matter of law.

Strong alleges UPT violated the Whistleblower Act by retaliating against him for reporting to the DOT certain safety issues he observed while working for the company. ECF No. 33 at 4, 12-13. Strong's claim fails as a matter of law because the Whistleblower Act that he cites never became law. The bill proposing the Whistleblower Act was filed in the United States House of Representatives but was never enacted into law. *See* H.R. 4047 (110th Congress); H.R. 6409 (112th Congress). Because Strong's claim for whistleblower liability does not exist under the Constitution or any federal law, the Court lacks subject matter jurisdiction over claims allegedly arising under the act and must dismiss Strong's claim for violation of the act. *Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994) (federal courts only have the power authorized by the constitution or statute). Any dismissal for lack of subject matter jurisdiction "should be made without prejudice." *Mitchell v. Bailey*, 982 F.3d 937, 944 (5th Cir. 2020).

### V. CONCLUSION

Strong did not timely exhaust his administrative remedies on his Title VII and Chapter 21 claims. Strong's Whistleblower Act claim is based on a bill never enacted into law, so the Court

has no subject matter jurisdiction over this claim. The statute of limitations on his § 1981 claims has not expired, and he has pleaded facts sufficient to support a reasonable belief of UPT's unlawful behavior. For these reasons, the undersigned **RECOMMENDS** that Judge O'Connor **GRANT** IN **PART** and **DENY IN PART** the Motion to Dismiss (ECF No.33). He should **DISMISS WITHOUT PREJUDICE** Strong's discrimination and retaliation claims under Title VII of the Civil Rights Act of 1964 and Chapter 21 of the Texas Labor Code and his claim under the never-enacted Private Sector Whistleblower Protection Streamlining Act. The undersigned further **RECOMMENDS** that Judge O'Connor **DENY** the Motion as to Strong's claims for racial discrimination and retaliation under 42 U.S.C. § 1981.

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). To be specific, an objection must identify the particular finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996) (en banc).

**SIGNED** on October 28, 2022.

Hal R. Ray, Jr.
UNITED STATES MAGISTRATE JUDGE